**Charlie C. LANE**

v.

**Abraham A. RIBICOFF, Secretary of Health, Education & Welfare.**

**Civ. A. No. 743.**

United States District Court
W. D. Virginia,
Abingdon Division.

Feb. 15, 1962.

A. B. Cooper, Jr., Bristol, Va., for plaintiff.

Thomas B. Mason, U. S. Atty., for the Western District of Virginia, Roanoke, Va., for defendant.

MICHIE, District Judge.

This action was brought to review a decision of a Hearing Examiner of the Department of Health, Education and Welfare holding that the plaintiff, Charlie C. Lane, was not entitled to the establishment of a period of disability under § 216(i) of the Social Security Act, as amended (42 U.S.C.A. § 416(i)), nor to disability insurance benefits under § 223 of said Act (42 U.S.C.A. § 423). The Appeals Council of the Social Security Administration having denied a review of the Examiner's holding, that holding became a final decision of the Secretary of Health, Education and Welfare (hereinafter called the Secretary) and therefore reviewable by action in this court under § 205(g) of said Act (42 U.S.C.A. § 405(g)).

Section 216(i) of the Act (42 U.S.C.A. § 416(i)) also in effect provides that to be entitled to benefits under the Act the claimant must have had at the time his disability began certain quarters of "coverage" under the Act, i. e., quarterly periods during which he was employed in employment covered by the Act, within a certain number of quarters prior to the onset of such disability. Plaintiff last met this coverage requirement on December 31 1956.

Section 205(g) of the Act (42 U.S.C.A. § 405(g)) provides that in such a proceeding as this the "findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." And the definitions of "disability" in

§ 216(i) of the Act, applicable to the establishment of a period of disability, and in § 223(c), applicable to disability insurance benefits, are identical as applied to the facts of this case, namely, "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration." Section 216(i) adds blindness, as there defined, as an additional definition of "disability" for the purposes of that section but blindness is not involved in this case.

The issue to be decided here, then, is whether there is substantial evidence to support the Secretary's conclusion that the plaintiff was not on December 31 1956 unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration.

There is abundant evidence to sustain the Secretary's conclusion.

Plaintiff's complaints go back some years before the cutoff date above mentioned and continue without much change so that reports of his condition from the beginning of 1954, certainly, to the end of 1956 are all relevant. On October 23 1954 Dr. N. J. Chew of Bristol, Tennessee wrote with respect to the plaintiff:

"He was advised not to return to work as yet and to return to see me in two weeks."

On November 30th Dr. Chew wrote again:

"He shows no evidence of hepatitis at the present time. He has many back aches and pains which I think are of no significance. I can't help but feel that a lot of his trouble is due to lack of initiative on his part.

"I know that he is indulging in alcohol against my advice. I have advised him to return to work as soon as possible (on or about December 5, 1954). * * * I doubt if he will return to work. If he does not I think an investigation should be made."

On March 28 1955 Dr. Chew again wrote:

"He says that he is feeling better and wants to know if he could return to work on about 1 April 1955. I see no reason why he should not do so and so informed him."

On April 28 1955 Dr. Chew wrote:

"Impression: Fibrositis moderate generalized.

"This man should return to work before he becomes a neurasthenic hypochondrial invalid. He was advised that the feeling of security, self respect, improvement in his general well being would soon justify the aches, pains and discomfort incident to working."

In a report of October 5 1955 Dr. Chew stated:

"To give him the benefit of doubt as to the etiology the conditions were classified as being viral in origin although alcoholism could as well have been the cause. He gradually improved but his somatic [1] complaints persisted until the time that he was last seen on May 21, 1955."

On October 14 1955 Dr. Wm. Allen Exum made a report with the following conclusions:

"Preliminary

Impression: 1. Question of arthritis of the lumbro-scaral spine.

---

[1] The doctors have apparently fallen into the habit of using "somatic", which literally means "bodily", as a short cut for "psychosomatic" which means bodily complaints resulting from an emotional situation and the word will be so used in the rest of this opinion.

2. Question of early rheumatoid arthritis of the hands.
3. Hypertension moderate.
4. Mild dilation of the ascending aorta."

On August 26 1955 Dr. Robert T. Strang wrote:

"The patient has multiple complaints and there is hardly a portion of the body he is questioned about without his giving a positive answer. * * *

"I believe the patient is fit for work, and do not believe he is disabled by any bodily disease."

Under date of November 13 1957 Dr. Thomas W. Green of Bristol made an examination with impressions as follows:

"Impressions: 1. Mild rheumatoid arhtritis.
2. Peripheral neuritis, type undetermined.
3. Episodes of syncope, cause not apparent.
4. Psychoneurosis chronic anxiety state.

* * * * * *

"This patient is undoubtedly disabled for his former employment at the Eastman Company in view of his arthritis and neuritis. However, he does not appear severely or completely disabled for other types of employment. It is my impression that he should be evaluated for some type of disability training which might enable him to become a useful citizen again."

On July 8 1958 Dr. Marshall B. Hogan, Jr. of Bristol wrote Miss Mary Ann Haney, counselor for the Vocational Rehabilitation Service for the State of Tennessee:

"It is my impression that this man has a paranoid personality disorder. This condition in itself is not disabling. No form of psychiatric treatment or hospitalization is indicated for this.

"* * * It is not my opinion that this man has any motivation toward rehabilitation. I do not believe that it is possible to give him such motivation. His only interest is in compensation and I am sure that he would refuse any offer of rehabilitation."

Miss Haney thereupon concluded that the plaintiff was not under a disability and so reported.

In a report from the Southwestern State Hospital at Marion, Virginia under date of May 18 1960 the following appears:

"Regarding previous illnesses, it was stated the patient had been a hard working and healthy man until the time of his retirement approximately three years ago. For three years prior to his retirement he had gradually been developing persecutory ideas, feeling that he had a great many enemies at the Eastman Company and that his boss and fellow workers were against him. The wife could give no reason for his retirement. Soon after this, however, he began to talk about getting social security disability. He developed all manner of complaints and began to go from one doctor to the other, demanding a physical examination and statement saying that he was disabled. The wife brought with her two reports, one from Dr. Shelton Reid, Kingsport, Tennessee, and the second from Dr. N. J. Shew, 4E Doctors Building, Bristol, Tennessee. Under the paragraph, 'physician's findings' on Dr. Shew's report were the following remarks: Obesity, moderate hypertension, tachycardia, enlarged tonsils, limited motion of the spine, increased sweating and general

nervousness. In his opinion, the patient's prognosis was poor because of his inability to grasp the significance of importance of his gradual resumption of activities, and work has greatly retarded his recovery.

"The second report from Dr. Shelton Reid stated that he had completed x-ray and laboratory studies and that these were negative. The neurological examination was essentially negative. The patient was examined by Dr. John S. Powers on March 19, 1958. His diagnosis was hypertension, cardiovascular disease, and peripheral neuritis. According to the wife, each doctor had told the patient that he was not seriously ill but had built up all of these physical complaints in his mind. The wife felt the patient had developed a definite dual personality."

The specific complaints of the plaintiff would leave one to believe that he was disabled on account of (1) a heart condition, (2) arthritis, (3) neuritis and (4) fainting spells. And while plaintiff does not claim to be mentally ill there are others who have thought at times that he might be.

Taking these possibilities up in turn we deal first with the heart condition. A medical report of February 28 1959 of Dr. J. E. Donlan of Kingsport, Tennessee, which in fact finds "total disability for manual labor", has no comments on any cardiac condition. A report of an electrocardiogram examination by Dr. D. S. Rainer, undated but apparently part of a more comprehensive report made in the summer of 1955, concludes:

"This is an essentially normal electrocardiogram for a patient of this age."

The conclusions of Dr. Exum's report above referred to do not mention any heart condition. Dr. Chew's report of October 14 1954 says:

"CR—no known heart trouble * * * heart normal size; rhythm regular; no murmers; A2 slightly accentuated."

And Dr. Chew's "Final Impressions" at the conclusion of that report do not mention any heart condition.

In Dr. Chew's report of October 5 1955 the cardiac functional capacity is checked in "Class 1 No Limitation." Dr. Green's letter above mentioned also refers to no heart trouble nor does Dr. Exum's.

As to arthritis, Dr. Strang in the letter above mentioned says:

"I can find no evidence of arthritis or old fractures in his spine. He has excellent motion in all his joints and no evidence of arthritis in any of these."

Dr. Exum says under "Preliminary Impressions":

"1. Question of arthritis of the lumbo-scaral spine."

Dr. Green's Impressions included: "Mild rheumatoid arhtritis."

At the time of the hearing plaintiff was living on the second floor of a house with 18 steep steps to climb and apparently was having no difficulty in going up and down. R. p. 76.

With respect to neuritis, Dr. Chew in his report of October 23 1954 gives as one of his Impressions:

"Neuritis, toxic multiple, left intercostal, right superficial femoral, right peroneal, secondary to virus infection in January 1954."

Nevertheless he says that he knows the patient is taking alcohol against his advice and there are indications in some of the medical records that some of the neuritis may have been caused by alcoholism. Despite his findings of this neuritis he has repeatedly recommended that the plaintiff return to work. The neuritis evidently improved as it is not mentioned in the later reports. See the report of Dr. Exum and the report of Dr. Strang above mentioned.

The evidence with respect to fainting spells is rather vague. There is evidence that plaintiff had fallen down a number

of times but the record could be interpreted as indicating that these falls may have been due to indulgence to excess in alcoholic spirits. At any rate it would seem that they almost certainly developed after the critical date of December 31 1956. In a report from Dr. John Munal of Kingsport, Tennessee, dated February 13 1961, which incidentally finds that the plaintiff is totally disabled, Dr. Munal says:

"On 4–5–60 patient stated that he has had blackout spells *recently* and passes out completely." (Emphasis supplied.)

"Recently" on April 5 1960 would hardly go back to the cutoff date of December 31 1956. And a letter of April 5 1960 from Dr. Munal to Mr. Albert B. Cooper, Jr., attorney for the plaintiff, uses precisely the same language. The affidavit of B. C. McInturff with respect to the plaintiff's falling down a stairway containing 23 landings (steps?) relates to an incident in 1957 or 1958.

Furthermore none of the medical reports other than Dr. Munal's appears to refer to such fainting spells.

As to mental illness, which the plaintiff does not claim disables him, the report of the Southwestern State Hospital, which is a mental institution, states that he had no impairment on discharge and, as noted above, the letter of Dr. Hogan of July 8 1958 states:

"It is my impression that this man has a paranoid personality disorder. This condition in itself is not disabling. No form of psychiatric treatment or hospitalization is indicated for this."

A number of the doctors and the plaintiff's wife apparently believe that plaintiff's complaints are somatic. As noted above Dr. Chew said in his report of October 5 1955:

He gradually improved but his somatic complaints persisted until the time that he was last seen on May 21, 1955."

Dr. Strang's conclusions as to lack of disability have been quoted above.

Dr. Hogan said:

"His sole preoccupation is obtaining disability compensation. He has figured to the penny what he is due in back pay. * * * It is not my opinion that this man has any motivation toward rehabilitation. I do not believe it is possible to give him such motivation. His only interest is in compensation and I am sure that he would refuse any offer of rehabilitation."

In the report of the Southwestern State Hospital, plaintiff's wife is quoted as follows:

"The wife has no idea why he was retired from his position. Soon after the patient's retirement he began to think and talk about getting social security disability. He developed all manner of complaints and began to go from one doctor to the other, demanding a physical examination and statement saying that he was disabled."

See also the excerpt quoted on pages 711 and 712 hereof from the report of the Hospital.

Of course I do not mean to give the impression that the evidence is all one way. Dr. Munal, writing to Mr. Cooper under date of 5–19–60, stated that the plaintiff is permanently disabled to pursue any gainful employment and despite the date of the letter one could perhaps infer that Dr. Munal was speaking of a long standing condition. The same thing may be said with respect to Dr. Merrill's report of September 17 1960 which finds the plaintiff "totally & permanently disabled to perform any form of employment" and plainly refers to conditions prior to the critical date. Another similar report of Dr. Munal with the same finding of disability is in a letter "To Whom it May Concern" dated February 13 1961. Nevertheless the issue is not whether there is some evidence that would support a finding of disability but whether there is or is not substantial evidence to support the Secretary's finding and there clearly is. The evidence that the

plaintiff was not disabled on or before December 31 1956, although not unanimous, is nevertheless overwhelming and the Secretary's finding must be sustained.

An order will be entered accordingly.